**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**
          Plaintiff,

v.

                              Case No. 5:17-CR-40085-TC-1

**DARNELL TYREE-PEPPERS**,
          Defendant.

## DEFENDANT'S MEMORANDUM OF LAW

Mr. Tyree-Peppers' supervised release expired July 5, 2022, after he had already sat in pretrial detention for 20 months awaiting his acquittal on state charges. This pretrial confinement occurred at the local jail just blocks from the federal courthouse. This jail, the Shawnee County Department of Corrections, was then and is still used by the United States Marshals Service to house federal pretrial inmates. During the entire period of Mr. Tyree-Peppers' confinement, from October 2020 to June 2023, a federal supervised release revocation petition and arrest warrant, filed on August 3, 2020, sat dormant. It took Mr. Tyree-Peppers' acquittal and release from state custody to force action on the old, supervised release violation allegations. The government could easily have used a writ of habeas corpus ad prosequendum to bring Mr. Tyree-Peppers to federal court for proceedings on the supervised release violations, but it chose not to. The Court has no basis for finding that the almost three-year delay was "reasonably necessary for the adjudication" of the supervised release petition. 18 U.S.C. § 3583(i).

### Background

The supervised release revocation proceedings arise from Mr. Tyree-Peppers' conviction of one count of theft of a firearm from a federally licensed dealer, 18 U.S.C. §§ 922(u), 924(m). On July 16,

2018, Mr. Tyree-Peppers was sentenced to 24 months' imprisonment, to be followed by a 3-year term of supervised release.

Mr. Tyree-Peppers was released from the Federal Bureau of Prisons and began his term of supervised release on July 5, 2019. On August 3, 2020, the Court signed a petition submitted the United States Probation Office that sought the revocation of Mr. Tyree-Peppers' term of supervised release. (Doc. 87). The Court also ordered that a warrant be issued and that the petition and warrant remained sealed until Mr. Tyree-Peppers' arrest. The petition alleged three violations: (1) that Mr. Tyree-Peppers' had interacted with two felons; (2) that he had failed to report to his probation officer as directed; and (3) that he had changed residence without notifying his probation officer.

USPO executed an amended petition on October 13, 2020. (Doc. 92). The Court signed the petition on October 16, 2020, and noted that a "[w]arrant has been previously issued." The amended petition added a fourth alleged violation:

> **Mandatory Condition: You must not commit another federal, state, or local crime.**
>
> On October 10, 2020, Mr. Tyree-Peppers was arrested by Topeka Police Officers in Topeka, Kansas, for First Degree Murder, Aggravated Burglary and Aggravated Robbery. This information is found in Topeka Police Department Case #2019-107065.

Shawnee County District Court records show that this TPD case number related to the offenses charged in 2020-CR-002194. These court records show that first appeared before Judge Penny R. Moylan on October 9, 2020, at which time counsel was appointed and a cash/professional surety bond was set at $1,000,000. A complaint/information was filed in Shawnee County District Court on October 13, 2020, charging Mr. Tyree-Peppers with four felonies: felony murder, attempted aggravated robbery, aggravated burglary, and conspiracy to commit aggravated robbery. The complaint/information notes that in the caption that Mr. Tyree-Pepper was "IN SN COUNTY

JAIL," and the caption also references "TPD 2019-00107065."

These district court records further show that Mr. Tyree-Peppers remained incarcerated at the Shawnee County Department of Corrections, i.e., the county jail, until his acquittal on June 12, 2023. Upon his acquittal, Judge C. William Ossman signed a custody slip ordering Mr. Tyree-Peppers immediate release, noting as the "reason for release" that "Jury returns NOT GUILTY verdict on all four counts."

Mr. Tyree-Peppers was not, however, released from the Shawnee County jail upon his acquittal on June 12, 2023. Instead, he was apparently held on an arrest warrant in the instant case. (Doc. 100). This warrant had been issued on August 3, 2020, and received by the United States Marshals Service on that date. But the return shows that the warrant was served until June 15, 2023, when "Subject was taken into custody via USMS detainer."

Mr. Tyree-Peppers' first appeared in the District of Kansas on June 20, 2023. (Doc. 97). Counsel was appointed and a detention hearing scheduled for June 22, 2023. On June 22, Mr. Tyree-Peppers was ordered released on conditions that included electronic monitoring and a curfew. (Doc. 102).

The Shawnee County jail is located at 501 SE 8th Avenue in Topeka, only about six blocks from the federal courthouse, which is at 444 SE Quincy in Topeka. This jail was and is currently used by the USMS as a holding facility for federal pretrial inmates. In fact, it was so used in Mr. Tyree-Peppers' own case, as he was held at the jail after Judge Ossman signed a custody slip releasing him following his acquittal, as he was brought to federal court for his first appearance on this supervised release revocation proceeding and during the period between that appearance and his release on conditions on June 22, 2023.

Mr. Tyree-Peppers appeared before this Court for his final supervised release revocation hearing on August 16, 2023. (Doc. 103). Citing 18 U.S.C. § 3624(e) and *Mont v. United States*, 139 S.Ct. 1826

(2019), the defense argued that the 3-year term of supervised release had expired in July 2022, while Mr. Tyree-Peppers was still being held in pretrial confinement in the Shawnee County jail. Because the Shawnee County District Court prosecution had ended in an acquittal, Mr. Tyree-Peppers was not subject to the tolling provision in § 3624(e) for "any period in which the person is imprisoned in connection with a *conviction* for a Federal, State, or local crime ..." (emphasis added). The defense noted that

### Argument

Mr. Tyree-Peppers' federal offense of conviction, theft of a firearm from a federally licensed dealer, 18 U.S.C. § 922(u), was punishable by imprisonment of up to 10 years. *See* 18 U.S.C. § 924(m). The offense was therefore a Class C felony, 18 U.S.C. § 3559(a)(3), and as such carried an "authorized term of supervised release ... [of] not more than three years[.]" 18 U.S.C. § 3583(b)(2). This term of supervised release began running on July 5, 2019, the date when Mr. Tyree-Peppers was released from the Bureau of Prisons:

> A prisoner whose sentence includes a term of supervised release after imprisonment *shall be released by the Bureau of Prisons to the supervision of a probation officer* who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. *The term of supervised release commences on the day the person is released from imprisonment* and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release.

18 U.S.C. § 3624(e) (emphasis added); *see also Mont v. United States*, 139 S.Ct. 1826, 1833 (2019) ("§ 3624(e) instructs courts precisely when the supervised-release clock begins—"on the day the person is released"").

1. **Section 3624(e)'s tolling provision was never triggered.**

Section 3624(e) includes a single tolling provision: "A term of supervised release does not run

during any period in which the person is imprisoned in connection with a *conviction* for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." (emphasis added). *Mont*'s holding leaves no doubt that the tolling provision applies only in the case of imprisonment culminating in a conviction:

> We hold that pretrial detention *later credited as time served for a new conviction* is "imprison[ment] in connection with a conviction" and thus tolls the supervised-release term under § 3624(e). This is so even if the court must make the tolling calculation after learning whether the time will be credited.

139 S.Ct. at 1832 (emphasis added). The *Monts* opinion reiterates that the tolling provision is triggered by a conviction coupled with the crediting of the time in pretrial confinement against the new sentence. *See id.* at 1829 ("if the court's later imposed sentence credits the period of pretrial detention as time served for the new offense, then the pretrial detention also tolls the supervised-release period"); *id.* at 1832 ("the phrase 'in connection with a conviction' encompasses a period of pretrial detention for which a defendant receives credit against the sentence ultimately imposed"); *id.* at 1835 ("pretrial detention qualifies as 'imprison[ment] in connection with a conviction' if a later imposed sentence credits that detention as time served for the new offense. Such pretrial detention tolls the supervised-release period").

Because Mr. Tyree-Peppers' pretrial confinement resulted in no "conviction" and therefore in no crediting of the time toward the non-existent sentence, § 3624(e)'s tolling provision was never triggered. Thus, his term of supervised release expired on July 5, 2022.

**2. The delay in bringing Mr. Tyree-Peppers to federal court was not reasonably necessary.**

Because Mr. Tyree-Peppers' term of supervised release expired over one year ago, the term can only be revoked if permitted by § 3583(i):

> **Delayed revocation**.--The *power of the court* to revoke a term of supervised release for violation of a condition of supervised release,

> and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period *reasonably necessary for the adjudication of matters arising before its expiration* if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

(emphasis added). The phrase "power of the court" reflects the jurisdictional nature of this statute. *See United States v. Pocklington*, 792 F.3d 1036, 1039, 1039 (9th Cir. 2015) (construing same phrase in probation revocation statute, 18 U.S.C. § 3565(c) and holding that "the plain language limiting the 'power of the court' sets out a jurisdictional rule"). As the Tenth Circuit recognized in interpreting a nearly identical probation statute, 18 U.S.C. § 3565(c), delayed revocation is only authorized if "(1) the delay in revocation was reasonably necessary and (2) a warrant or summons issued before the expiration date." *United States v. Crisler*, 501 F.3d 1151, 1152 (10th Cir. 2007). Only the first requirement is at issue here.

The issue is whether the delay between the issuance of the amended supervised release revocation petition on October 16, 2020, and its yet-to-occur adjudication, now approaching three years, is "reasonably necessary for the adjudication of matters arising before" the expiration of the term. 18 U.S.C. § 3583(i). The statutory standard looks to what is "necessary" for "adjudication." Although the qualifier "reasonably" suggests that something short of absolute logical necessity may justify delay, the statute requires something more stringent than mere "reasonableness." The Court should reject any claim that the pendency of the state court prosecution—which resulted in an acquittal—renders this lengthy delay "reasonably necessary."

First, Mr. Tyree-Peppers could easily have been brought to federal court via a writ of habeas corpus ad prosequendum. *See United States v. Garrett*, 253 F.3d 443, 447 (9th Cir. 2001) (recognizing that "awaiting a defendant's release from state custody to execute a violation warrant ... is not

technically 'necessary' given the federal government's power to execute a writ of habeas corpus ad prosequendum"). As noted by the defense at the August 16, 2023, revocation hearing, the Shawnee County jail, where Mr. Tyree-Peppers was held on the state charges from October 9, 2020, to June 12, 2023, also serves as a federal pretrial holding facility for the United States Marshals Service, and it is located only about six blocks from the federal courthouse.

Second, there is no need for a state court to adjudicate a criminal case before the conduct allegedly underlying that state case can be adjudicated in a federal supervised release revocation proceeding. The standard of proof for a federal supervised release violation finding is a preponderance of the evidence, 18 U.S.C. § 3583(e)(3), rather than the beyond-a-reasonable-doubt standard applicable in a state court trial. Furthermore, a supervised release revocation does not require adherence to the "right to a jury trial," and "[n]either the Confrontation Clause nor the formal rules of evidence ha[ve] to be followed." *United States v. Haymond*, 139 S.Ct. 2369, 2391 2019) (Alito, J., dissenting). A revocation court may rely on evidence of criminal conduct that violates a defendant's supervised release regardless of whether the defendant has been separately prosecuted. Furthermore, evidence inadmissible in a state court prosecution may be used in a federal supervised release revocation proceeding. *See United States v. Hall*, 984 F.2d 387, 390 (10th Cir. 1993) ("The cooperation agreement was reached with state authorities and protected the defendant only from state criminal proceedings," so it did not bar use of evidence at federal supervised release revocation hearing). Thus, the Sentencing Guidelines explicitly recognize that a supervised release violation "may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." USSG §7B1.1, comment. (n.1). *Cf. United States v. Poellnitz*, 372 F.3d 562, 566 (3d Cir. 2004) ("When the condition is that the defendant not commit a crime, there is no requirement of conviction or even indictment. ... In order to establish that Poellnitz was guilty of

a violation of this condition of release, therefore, the government did not have to show that he was convicted of a new crime but did have to show that he actually committed a new crime."). It was therefore not "reasonably necessary" to delay Mr. Tyree-Peppers' supervised release revocation hearing for almost three years while awaiting the disposition of his state court charges.

The defense recognizes that other circuits have used various avoidance techniques to neuter the "reasonably necessary for the adjudication" limitation and substitute a blanket rule that revocations proceedings can be delayed as long as the defendant's state court matter is pending. *See, e.g., United States v. Garrett*, 253 F.3d 443, 450 (9th Cir. 2001) (holding, over dissent, that § 3583(i) permits district courts to "postpone the federal adjudication of matters ... until after the defendant is released from state custody."). The Second Circuit has held that because "state adjudications are plainly relevant to the federal determination of whether or not a releasee has committed a crime in violation of state law," the pendency of state court proceedings is alone sufficient to render delay "reasonably necessary." *United States v. Ramos*, 401 F.3d 111, 116-17 (2d Cir. 2005). The Second Circuit fails to acknowledge the obvious gap between "relevan[ce]" and "reasonabl[e] necess[ity]." Nor did the Second Circuit take into account that Congress knows how to create a tolling provision for situations involving federal defendants who are involved in other criminal proceedings. *See, e.g.*, 18 U.S.C. § 3161(h)(1)(B) (automatically Speedy Trial Act exclusion for "delay resulting from trial with respect to other charges against the defendant").

The Sixth Circuit has reasoned that delays attributed to the pendency of the state court proceedings should be deemed "reasonably necessary" because they were caused by the defendants' own conduct. *See United States v. Madden*, 515 F.3d 601, 607 (6th Cir. 2008) ("the delay ... was caused by court proceedings, which in turn were caused by Madden's own conduct"). The Sixth Circuit fails to explain why the defendant's fault is relevant to determining whether delay is "reasonably

necessary for the adjudication" of supervised release violations. That is, the "reaonabl[e] necess[ity]" must relate to the ability to "adjudicat[e]" violations, and defendant's own fault is extraneous to this standard. Regardless, this flawed reasoning is inapplicable here, where the delay resulted from Mr. Tyree-Peppers pretrial detention on charges for which he was found not guilty.

## Conclusion

Mr. Tyree-Peppers' supervised release expired long ago, as he awaited his acquittal in state court. The government chose not to use a writ of habeas corpus ad prosequendum to bring him a few blocks to federal court from a jail used by the USMS to house federal pretrial inmates. Of course, had Mr. Tyree-Peppers actually been guilty of the state court crimes, this would have reduced the government's burden to prove at least one set of the alleged violations. This Court has jurisdiction to revoke Mr. Tyree-Peppers' supervised release after its expiration only if the delay was "reasonably necessary for the adjudication" of the violations. The fact that delay might have made proving its case more convenient for the government does not meet this standard. This is particularly obvious here, where Mr. Tyree-Peppers was acquitted in state court, rendering the delay purposeless.

Respectfully submitted,

S/Thomas W. Bartee
Thomas W. Bartee, #15133
Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, KS 66603
(785) 232-9828
Fax: (785) 232-9886
Email: Tom_Bartee@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

    I hereby certify that on March 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Stephen Hunting
Assistant United States Attorney
stephen.hunting@usdoj.gov

                                                    S/Thomas W. Bartee
                                                    Thomas W. Bartee, #15133